Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 12-2272

UNITED STATES OF AMERICA,

Appellee,

v.

MARLON BRICENO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Chief Judge,
Stahl and Howard, Circuit Judges.

Elizabeth Caddick, by appointment of the court, for appellant.
Young Paik, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

January 6, 2014

**PER CURIAM.** Marlon Briceno was ordered by his criminal associates to collect a debt from Genaro Medrano, who had been given on consignment approximately fifty thousand pills of benzylpiperazine (BZP). Having previously paid part of the debt, Medrano still owed $75,000 at the time Briceno was sent to collect. Unbeknownst to Briceno and his associates, Medrano was cooperating with the DEA. In an effort to collect, Briceno met with Medrano and Alex Hernandez, an undercover DEA agent who presented himself as Medrano's associate. If, prior to this meeting, Briceno was not aware that the debt was for drugs, or that his associates were involved in a drug conspiracy, he knew these facts by the end of the meeting, as Medrano and Hernandez made a point of explaining them. Medrano and Hernandez gave Briceno $5000, and the parties agreed to later arrange payment on the outstanding $70,000. After several unsuccessful calls to Medrano to demand further payment, Briceno again met with Herndandez, threatening violence against Medrano and his family at their home if he did not pay.

Agents subsequently searched Briceno's residence, seizing firearms and a ski mask. He was indicted, convicted, and sentenced for conspiracy to collect an extension of credit by extortionate means, and conspiracy to distribute BZP. Not contesting the extortion conspiracy count, Briceno appeals the drug conspiracy conviction and sentence on three grounds.

First, conceding both that he intended to further the aim of <u>some</u> conspiracy and that he eventually learned that his associates were involved in a drug conspiracy, Briceno nevertheless argues that there was insufficient evidence of his intent to join the drug conspiracy. This preserved sufficiency-of-the-evidence challenge is reviewed de novo. <u>United States</u> v. <u>Sherman</u>, 551 F.3d 45, 49 (1st Cir. 2008). The law is clear that,

> [t]o join a drug conspiracy, a defendant must agree with others to advance [its] aim . . . . Advancing the aim of the conspiracy can involve performing ancillary functions such as . . . collecting monies . . . as long as such actions are performed with the aim of furthering the conspiracy. To hold that defendants have "joined" a conspiracy, there must be sufficient evidence both that they knew about the conspiracy and that they knew the ancillary service would advance that conspiracy.

<u>United States</u> v. <u>Soto-Beníquez</u>, 356 F.3d 1, 18 (1st Cir. 2003) (citations omitted).

There was sufficient evidence that Briceno's efforts to collect the debt, undertaken with knowledge of the drug conspiracy, in fact advanced the conspiracy's aim: Payment is one half of a commercial drug distribution transaction (the other half being delivery). And there was sufficient evidence that Briceno <u>knew</u> his efforts would do so: He was asked by associates whom he discovered to be drug distributers to collect money from someone whom he discovered to be a drug purchaser.

Second, Briceno argues that admission of the firearms and ski mask evidence was error. The trial court's decision to admit evidence is reviewed for abuse of discretion. United States v. Upton, 559 F.3d 3, 15 (1st Cir. 2009). Contrary to Briceno's contention, the firearms evidence was relevant to the extortion conspiracy. See, e.g., United States v. Gilley, 836 F.2d 1206, 1214 (9th Cir. 1988) ("[P]ossession of handguns tends to show that [defendants'] . . . threats were real and that they had the wherewithal to carry them out."); United States v. Touloumis, 771 F.2d 235, 240 (7th Cir. 1985) ("[T]he admission of the gun was relevant in order to shed light on [defendant]'s intentions in his effort to collect the . . . debt . . . ."). That evidence's relevance to the drug conspiracy thus need not be resolved: Briceno did not request that the jury be instructed to consider certain evidence only with respect to certain counts.

Nor was the firearms evidence unfairly prejudicial. See United States v. Perrotta, 289 F.3d 155, 166-67 (1st Cir. 2002) (upholding admission of firearms evidence to prove extortion conspiracy where nothing in record suggested that evidence would have "inflamed the jury or inspired them to decide the case on an emotional basis"). In fact, the district court decreased the potential for prejudice by admitting photographs of the evidence, as opposed to the objects themselves. See United States v. Candelaria-Silva, 162 F.3d 698, 705 (1st Cir. 1998).

And, given that Briceno's threats suggested the possibility of an attack at Medrano's home, Briceno's possession of a mask that could be used to avoid identification was relevant to his intent to follow through. To the extent that Briceno challenges the admission of the ski mask based on prejudice, such a challenge was not raised below, but, even if it had been raised, it would fail. See id. (upholding, against challenge of prejudice, admission of mask to support conspiracy charge).

Third, Briceno argues that the drug conspiracy sentence both was unreasonable and resulted from sentencing factor manipulation. With respect to the reasonableness of the sentence, Briceno contends that the drugs should not have been attributed to him given his limited role in the conspiracy. In the case of a conspiracy, a defendant's offense level "shall be determined on the basis of . . . all reasonably foreseeable acts . . . of others in furtherance of the jointly undertaken criminal activity." U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B). The district court's findings as to the quantity embraced by the conspiracy and reasonably foreseen by the defendant are reviewed for clear error. United States v. Rodríguez, 162 F.3d 135, 149 (1st Cir. 1998).

Rather than using the initial presentence investigation report, which calculated Briceno's offense level based on the fifty thousand pills delivered to Medrano, the district court held Briceno responsible for only that portion of the drugs associated

with the $75,000 of debt outstanding at the time of Briceno's collection efforts. It was foreseeable to Briceno that the pill quantity associated with this amount of money was within the scope of the criminal activity that he jointly undertook.

With respect to sentencing factor manipulation, Briceno contends that he was wrongly held accountable for drugs of which he had knowledge solely because the Government, through Hernandez, informed him of them. Contrary to Briceno's protestation, his charge of sentencing factor manipulation, not pressed in the district court, is not preserved simply because he did argue for a reduced sentence and for discounting a particular sentencing factor. See United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011).

Even were the argument preserved it would fail. While the Government, through Hernandez, provided Briceno information about the drugs, he, without further prompting, continued his efforts to collect the drug debt. See West v. United States, 631 F.3d 563, 570 (1st Cir. 2011) (sentencing factor manipulation requires showing extraordinary misconduct, for example, that the Government "'overpowered the free will of the defendant and caused him to commit a more serious offense than he was predisposed to commit'" (quoting United States v. Villafane-Jimenez, 410 F.3d 74, 87 (1st Cir. 2005))); United States v. Montoya, 62 F.3d 1, 3-4 (1st Cir. 1995) (sentencing factor manipulation cannot be made out "simply by showing that the idea originated with the government or that the conduct was encouraged by it, or that the crime was

prolonged beyond the first criminal act, or exceeded in degree or kind what the defendant had done before" (citations omitted)).

Affirmed.